ENOCH WANG (SBN 218904)
enochwang@fifelawllp.com
FIFE LAW, LLP
300 Montgomery Street, Suite 631
San Francisco, CA  94104
Telephone:  (415) 837-3101
Facsimile:  (415) 837-3111

Attorneys for Plaintiff
Jared Small

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| JARED SMALL,<br><br>                    Plaintiff,<br>vs.<br><br>BON WOONG KOO, FIR HILLS, LLC, FIR HILLS GP I, LLC, MAUM CAPITAL GROUP INC.<br><br>                    Defendants. | Case No.<br><br>**COMPLAINT FOR**<br><br>**1. INTENTIONAL MISREPRESENTATION;**<br>**2. BREACH OF CONTRACT;**<br>**3. BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING**<br>**4. PROMISSORY ESTOPPEL** |

Plaintiff Jared Small hereby alleges as follows:

## NATURE OF THE ACTION

1. Defendant Bon Woong Koo (also known as Brian Koo), who promotes himself as an heir to one of South Korea's most powerful business conglomerates, hired Plaintiff Jared Small to help him develop business for his new investment venture in exchange for an industry-standard salary and equity. That venture included Defendant Maum Capital Group, Inc. and its affiliates, Defendant Fir Hills, LLC and Defendant Fir Hills GP I, LLC (collectively, "Maum"). Plaintiff performed admirably—working over 800 hours to develop Maum's marketing materials, arranging meetings with some of the largest investors in the industry, and securing a major strategic partner. But Koo and Maum inexplicably refused to pay him. They offered constant excuses—praising his work to keep him engaged while claiming liquidity issues, pending investments, and promising payment "ASAP," "next month," "next week," and so on. From time to time, they wired him token sums—small fractions of what he was owed—just enough to "tide him over." But the promised payments never came.

2. After months of delay and exhaustive efforts to resolve the matter, it became clear that Defendants never intended to pay Plaintiff. Instead, they defrauded him—exploiting his expertise and connections for their own gain. Plaintiff now brings this action to recover the compensation he is owed and to hold Defendants accountable for the damage they have caused to his career and reputation.

## THE PARTIES

3. Plaintiff is a citizen of the State of Connecticut.

4. Defendant Bon Woong Koo (also known as Brian Koo) is a citizen of the State of California. He is the Chairman of Maum.

5. Defendant Maum Capital Group Inc. is a Delaware corporation with its principal place of business in Palo Alto, California.

6. Defendant Fir Hills, LLC is a Delaware Corporation with its principal place of business in Palo Alto, California.

7. Defendant Fir Hills GP I, LLC is a Delaware corporation with its principal place of business in Palo Alto, California.

8. Plaintiff is informed and believes and hereon alleges that Defendant Koo disregarded corporate formalities and used Maum's funds for his other business interests and that any corporate veil should be pierced.

## JURISDICTION AND VENUE

9. This Court has original jurisdiction under 28 U.S.C. § 1332, in that this is a civil action between citizens of different states in which the matter in controversy exceeds, exclusive of costs and interest, $75,000.00 without counting interest and costs.

10. This Court has personal jurisdiction over Defendants because they are residents of California, are doing business in California and have made continuous and systematic contacts with California.

11. Venue is proper under 28 U.S.C. § 1391(b) because the events giving rise to the claims occurred in the Northern District of California.

## FACTUAL ALLEGATIONS

12. Plaintiff Jared Small is a seasoned financial professional with over 18 years of experience in global fundraising, business development and investor relations. He has helped launch more than 20 hedge fund strategies—both boutique and within some of the largest investment platforms in the world—and has raised several billions of dollars in capital from sovereign wealth funds, pensions, foundations, endowments, family offices and high-net-worth investors.

13. In January 2023, Plaintiff started Synaps, a media investment and development company, with his partner Phillip Eubanks. Synaps focused on identifying, creating, and maximizing intellectual property value across film, television, music, gaming and branded content. Shortly after its founding, Defendant Brian Koo and then CEO of Maum, Charlie Shin, approached Plaintiff and Eubanks to pursue a joint venture between Synaps and Maum.

Complaint                                                                                                   3
Case No.

14. Defendant Brian Koo is a member of the powerful Koo family, which controls the South Korean conglomerates LG and LS. For years, Koo has used his family name to start a series of investment ventures in Silicon Valley. Koo has persuaded many established professionals and rising stars to invest with him, partner with him, or work for him.

15. Koo's latest venture is Maum, which pitches itself as a "private investment house and industry building pioneer" that is "opening up a new horizon by linking our success in Silicon Valley and our incomparable access in Korea." Maum further states that "[t]he unfair access and knowledge we possess of the Korean market will generate undeniable value by providing a platform for those with the potential to bring impact to our society and the Global markets."

16. In the spring of 2023, Defendant Koo and his associate Charlie Shin approached Plaintiff to enter into a joint venture between Synaps and Maum. On April 1, 2023, Koo signed a binding letter of intent with Plaintiff's firm, Synaps. In the letter of intent, Maum agreed to pay Plaintiff and his partner Eubanks each an advance consulting fee of $41,667 per month for the first three months, and $62,500 per month from the fourth month onwards. Maum also agreed to commit $150,000,000 up to $200,000,000 of capital to Synaps and grant Synaps a "meaningful" percentage of its equity in an amount to be determined later. In exchange, Plaintiff and Mr. Eubanks would use their experience and connections to help develop business and strategic partnerships for Maum in the private equity and media space, and management and performance fees from the Synaps investment company were to be split 50/50 between Synaps and Maum.

17. In May 2023, Koo and Shin informed Plaintiff that Maum was unhappy with Plaintiffs' partner, Mr. Eubanks, and that they wanted to continue with Plaintiff only. The parties agreed to terminate the letter of intent, and Koo sent a termination notice to memorialize the agreement. Simultaneously, Koo and Shin proposed to give Plaintiff a position with Maum equivalent to general partner and chief of partnerships of Maum. In exchange, Koo agreed with Plaintiff that Maum would honor the terms of the letter of intent. Plaintiff would receive the

full consulting fee payments ($41,666.66 per month for April-June 2023 and $62,500 per month beginning in July 2023), and a "meaningful executive-level" equity interest in Maum.

18. Plaintiff set to work immediately, generating significant leads, meetings, and deals for Maum – exactly the value he had contracted to bring. From April 2023 to November 2023, Plaintiff, at the direction of Koo and Shin, performed over eight hundred hours of work developing business and strategic partnerships for Maum in the private equity and investment management space. At Koo's direction, Plaintiff traveled to New York, Los Angeles, Palo Alto, Chicago and South Korea to procure deals for Maum.

19. Plaintiff's work included fund structuring, pitchbook and other marketing materials development, strategic partnership sourcing and development, business planning (including weekly formal scheduled zoom calls with Maum team), integrated marketing development (including bi-weekly formal calls with key development partner at the time, BDT & MSD capital), leadership development sessions, private equity and public markets-focused deal work and representing Maum in key prospective client meetings. Koo and Shin repeatedly praised Plaintiff for his work, and offered him a role as co-CEO of Fir Hills, one of Maum's closely related entities.

20. In June 2023, Maum missed the first payment due to Plaintiff. Plaintiff asked Koo and his CFO, Lae Jang, about it, and Koo told Plaintiff there was a temporary cash-flow constraint. Jang assured Plaintiff that the delay was only temporary. Koo and Shin both separately assured Plaintiff that the necessary capital was incoming to Maum shortly. Plaintiff continued working for Maum based on these representations.

21. In summer 2023, Plaintiff set up a series of meetings with a growth equity firm to explore a strategic partnership with Maum.

22. After many hours of working on the deal, including brokering and participating in a joint trip to Seoul, South Korea, Koo agreed to purchase a 10% - 15% equity ownership stake in the equity firm at a $200,000,000 fully diluted valuation. The first $10,000,000 was to be paid by Maum to the equity firm before February 1, 2024, and the second $10,000,000 by

April 1, 2024, with the optional third $10,000,000 no later than June 3, 2024. In the strategic partnership agreement between Maum and the equity firm, which Plaintiff negotiated, the equity firm would pay Maum a significant portion of its management fees on introduced accounts. Specifically, the equity firm would pay Maum 25% on introduced capital below $500 million, 35% on introduced capital from $500 million to $1 billion, and 50% on introduced capital raised above $1 billion.

23. Maum was also to receive a carried interest portion on introduced accounts of 37.5% of raised capital under $100 million, and 50% of raised capital above $100 million. There was no sunsetting on these fees for all the equity firm's funds and strategies.

24. However, Maum defaulted on its agreement with the equity firm. Maum never made the agreed upon payments to the equity firm. As a result, Plaintiff never received a finder's fee that he would have received for his work setting up, brokering, and negotiating the deal.

25. Maum missed its monthly payments to Plaintiff in June, July, August, September, October and November 2023. Plaintiff continued to follow up to ask Koo and his associates about the payments, and they continued to promise that the payments were coming "ASAP," "next month," or "next week" or "in a matter of days." But the payments never came. In September 2023, Koo personally wired Plaintiff $35,000 – half of a monthly payment he had agreed to pay Plaintiff – to "tide him over" because of the delay.

26. In December 2023, Plaintiff told Maum and Koo that he would need to separate from Maum because he could not continue to live and support his family without the monthly paychecks that were promised to him. Koo and Plaintiff agreed at this point to reduce Plaintiff's equity stake from a "meaningful executive level" interest in Maum down to 2% in Fir Hills. Koo and Plaintiff further agreed to revisit their arrangement once Maum's funding was more solid and Maum paid Plaintiff what it owed him.

27. Even after Plaintiff's departure, Koo continued to ask for Plaintiff's help with Maum, and assured Plaintiff time and time again that the full payment would be made. Koo

Complaint                                                                                              6
Case No.

even agreed to pay nine percent interest due to the delays in payment. In May 2024, Plaintiff met with Koo in Silicon Valley, and Koo personally assured him the payment was imminent. In July 2024, Koo again acknowledged that the consulting fee amount owed to Plaintiff was in excess of $350,000, and that "I will make sure to get a plan to you ASAP."

28. In October 2024, Koo messaged Plaintiff that he was receiving a wire from an investor which should hit Maum's account "any moment," and would send the payments owed to Plaintiff directly thereafter. In November 2024, Koo messaged Plaintiff that the wire would be executed this week. In December 2024, Plaintiff and Koo agreed to schedule a call for Koo to update Plaintiff on the payments, but Koo continually pushed the call back, and it never happened.

29. On January 31, 2025, Koo messaged Plaintiff that, "I would like to at least start sending you some amount even if it is small personally," and asked for Plaintiff's wire details, which he provided. However, Koo and Maum never paid the fees that they had promised to pay Plaintiff. Koo at this point began to ignore Plaintiff's requests for updates until Plaintiff shared with Koo that he had engaged a law firm in order to take formal action. Koo then responded that he "hoped we could figure this out without the lawyers involved," and offered to personally send Plaintiff $5,000, a tiny fraction of what is owed. However, Koo failed to even send that, let alone the full payments, despite these assurances.

30. In September 2025, Koo wrote to Plaintiff that he should be able to pay "$50K by end of October" and another "$450K by end of December". Koo also offered to settle on the additional finder's fee portion of what is owed to Plaintiff in the form of shares that Koo would buy back from Plaintiff. When Plaintiff asked Koo to commit to sending these payments, Koo again stopped responding. At this time, Plaintiff had done everything in his power to resolve this informally and felt there was no other choice than to bring this to action.

## FIRST CAUSE OF ACTION

## (INTENTIONAL MISREPRESENTATION)

## (AGAINST DEFENDANT BON WOONG KOO)

31. Plaintiff realleges and incorporates by reference each and every allegation above as though fully set forth herein.

32. Defendant Koo promised Plaintiff to pay him consulting fees of $41,667 per month for April-June 2023 and $62,500 per month thereafter (beginning in July 2023), and 2% of Maum's equity in exchange for Plaintiff's provision of business development services to Maum. In addition, Defendant Koo defaulted on his payments to the equity firm, resulting in a Plaintiff not receiving a finder's fee.

33. On information and belief, Defendant Koo did not intend to perform these promises when he made them. Koo made these promises to induce Plaintiff to work for Maum, with the intent that Plaintiff would rely upon them.

34. Plaintiff reasonably relied on Defendant Koo's promises.

35. Defendant Koo did not perform his promises.

36. Plaintiff was harmed as a direct result of his reliance on Defendant Koo's promises. In justifiable reliance on Defendant Koo's representations, Plaintiff turned down other offers of employment which would have paid him well in excess of $750,000 during the time that he worked for Maum. Had Plaintiff been aware that Defendant Koo had been sued by his co-founder for failing to pay his salary and that Defendant Koo did not have any intention of paying Plaintiff's salary, Plaintiff would not have accepted employment with Maum and would have ended his employment after not being paid his first month's salary.

37. Defendant Koo acted with malice, oppression, fraud, and in reckless disregard of Plaintiff's rights. Therefore, Plaintiff is entitled to recover an award of punitive and exemplary damages.

## SECOND CAUSE OF ACTION

### (BREACH OF CONTRACT)

### (AGAINST ALL DEFENDANTS)

38. Plaintiff realleges and incorporates by reference each and every allegation above as though fully set forth herein.

39. Plaintiff entered into an oral agreement with Defendants to serve in a role equivalent to chief partnership officer.

40. Plaintiff has complied with all applicable terms and conditions of the oral agreement.

41. Defendants breached their obligations to Plaintiff, among other actions and inactions, by failing to pay the salary agreed upon and owed to Plaintiff exceeding $386,000, and failing to pay the equity in Maum promised to Plaintiff.

42. As a result, Plaintiff has been damaged and continues to sustain damages due to Defendants' breach of contract.

43. Plaintiff requests entry of judgment for breach of contract, awarding payment of damages in an amount to be proven at trial.

## THIRD CAUSE OF ACTION

### (BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING)

### (AGAINST ALL DEFENDANTS)

44. Plaintiff realleges and incorporates by reference each and every allegation above as though fully set forth herein.

45. There is an implied covenant of good faith and fair dealing in every agreement that the parties will act in good faith and deal fairly with each other.

46. Defendants breached their duty of good faith and fair dealing owing to Plaintiff by conduct designed and intended to frustrate Plaintiff's ability to enjoy the benefits of the agreement, including but not limited to by not following through or breaching agreements in principle reached by Plaintiff for strategic partnerships with Maum which would have resulted in finders fees for

Plaintiff, continuing to assure Plaintiff that his salary was going to paid when it had no intention of doing so.

47. As a result of Defendants' breaches of the implied covenant of good faith and fair dealing, Plaintiff has incurred substantial damages.

48. As a result of Defendants' breaches of its duty of good faith and fair dealing, Plaintiff requests entry of judgment awarding payment of damages.

## FOURTH CAUSE OF ACTION
## (PROMISSORY ESTOPPEL)
## (AGAINST ALL DEFENDANTS)

48. Plaintiff realleges and incorporates by reference each and every allegation above as though fully set forth herein.

49. This cause of action is alleged in the alternative, that Defendants made clear and unambiguous promises of compensation and payment to Plaintiff, Plaintiff reasonably and foreseeably relied on Defendants' promises, and Plaintiff has been injured by his reliance.

## **PRAYER FOR RELIEF**

Plaintiff demands judgment against Defendants, and other relief as follows:

1. For damages in excess of $75,000 in an amount to be determined at trial, together with prejudgment and postjudgment interest;
2. For delivery of the 2% equity in Fir Hills promised to Plaintiff;
3. For punitive and exemplary damages in an amount to be determined at trial;
4. For Plaintiff's costs of suit; and
5. For such other and further relief as the Court may deem just and proper.

Dated: October 23, 2025                FIFE LAW, LLP

By   */s/Enoch Wang*
     Enoch Wang
     Attorneys for Plaintiff Jared Small

Complaint
Case No.

10